IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| STEPHEN GILLIS SMITHERMAN, | ) |
| :--- | :--- |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 2:20-00377-KD-N |
| | ) |
| UNITED STATES DEPARTMENT | ) |
| OF JUSTICE *et al.*, | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

This civil action is before the Court on Defendants' (collectively, "the Government's") motion to dismiss Plaintiff Stephen Gillis Smitherman's ("Smitherman's") complaint as moot under Federal Rule of Civil Procedure 12(b)(1) (Doc. 19).[1] Pursuant to the Court's briefing schedule (Doc. 20), Smitherman filed a response (Doc. 21) to which the Government filed a reply (Doc. 22). Upon consideration, the undersigned **RECOMMENDS** that the Government's motion to dismiss (Doc. 19) be **GRANTED** and Smitherman's complaint (Doc. 1) be **DISMISSED without prejudice**.

## I. Background

Smitherman brings this civil action against the Government under 18 U.S.C. §1925A to remedy the allegedly wrongful denial of a firearm purchase application. The complaint alleges that Smitherman attempted to buy a firearm from a federally

---

[1] The assigned District Judge referred this motion to the undersigned Magistrate Judge on April 5, 2021 for appropriate action under 28 U.S.C. § 636(a)–(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b).

licensed dealer on August 24, 2016. (Doc. 1, PageID.2). The firearm vendor, as required by federal law, initiated a background check to ensure that Smitherman could legally purchase the firearm. (Doc. 1, PageID.2). Smitherman, however, has a criminal history: he was convicted of violations of (1) 21 U.S.C. § 846 (Possession of Cocaine) and (2) 18 U.S.C. § 242 (Deprivation of Civil Rights), to which he was sentenced to two concurrent six-month sentences and ordered to pay a $1,000 fine as well as two special assessments of $50. (Doc. 19, PageID.82). Given these prior convictions, the subsequent background check grew more complicated. Another court dealing with a similar situation aptly describes the complex process:

> A person seeking to obtain a firearm may do so by purchasing one from a Federal Firearm Licensee (FFL)—someone who can legally participate in the sale of firearms, *See* 18 U.S.C. § 923(a), or, by filing an application, known as Form 4, with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to complete a National Firearms Act (NFA) transfer of a firearm. *See* 27 C.F.R. § 479.86.
>
> When someone attempts to purchase a firearm from an FFL, the FFL sends information about the purchaser to the Federal Bureau of Investigation (FBI), which conducts a background check using the National Instant Criminal Background Check System (NICS). *See* 34 U.S.C. § 40901(b)–(c). If an individual seeks to obtain a firearm by filing Form 4 with the ATF, the ATF contacts the FBI to conduct the background check. *See* 27 C.F.R. § 479.86. After the background check is completed, the ATF decides whether to transfer the firearm to the individual or to deny the request. *See id.*
>
> When the FBI conducts an NICS background check, it searches three databases: (1) the NICS Index, (2) the National Crime Information Center (NCIC), and (3) the Interstate Identification Index (III). *See* 28 C.F.R. § 25.6(c)(iii). Next, the FBI NICS Operations Center determines if the transaction can "proceed," if the application should be "denied," or if the transaction should be "delayed" to give the FBI more time to investigate the applicant. 28 C.F.R. § 25.6(c)(iv). A person may be denied if he "has been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).

> A person who believes he or she has been erroneously denied or delayed in purchasing a firearm can file an appeal with the FBI. *See* FBI, Appeals and Voluntary Appeal File (VAF), https://www.fbi.gov/services/cjis/nics/national-instant-criminal-background-check-system-nics-appeals-vaf (last visited Sept. 11, 2019). The VAF is a system maintained by the FBI that stores an individual's record of past acceptances, denials, delays, and appeals. *See id.* An individual can apply to the VAF to request that his records be kept in the system. *See id.* An applicant who is accepted and entered into the VAF is given a Unique Personal Identification Number (UPIN) that allows him to access his records to expedite a future transaction. *See id.* After the FBI reviews an appeal, it deletes the record of the transaction unless the applicant is in the VAF. *See id.*
>
> Besides filing an appeal, a person who is not prohibited from owning a firearm under 18 U.S.C. § 922(g) and is denied after a background check "may bring an action against the State or political subdivision responsible for providing the erroneous information . . . or against the United States . . . for an order directing that the erroneous information be corrected or that the transfer be approved." 18 U.S.C. § 925A.

*Umbert v. United States*, No. 18-CV-1336 (TSC), 2019 WL 4305576, at *1–2 (D.D.C. Sept. 11, 2019).

After executing the federal background check process, the firearm dealer informed Smitherman that his application to purchase a firearm had been denied. (Doc. 1, PageID.2). Smitherman inquired about his denial, and the Government explained that it believed Smitherman had been convicted of a felony, which, under 18 U.S.C. 922(g), would disqualify him from owning a firearm. (Doc. 1, PageID.2). Smitherman then initiated an appeal of his denial through the FBI, arguing that his past convictions were only for misdemeanor offenses. (Doc. 1, PageID.2). While this appeal was pending, Smitherman's pistol permit was revoked by the Sheriff of Dallas County, Alabama after the Government reached out to inform him of Smitherman's

3

purported felony conviction. (Doc. 1, PageID.4). On June 18, 2020, the Government rejected Smitherman's appeal and upheld his denied firearm purchase application. (Doc. 1, PageID.4).

After exhausting the administrative appeal process, Smitherman filed the present suit under 18 U.S.C. 1925A, seeking, along with an award of fees and costs, an order from the Court directing the Government to: (1) correct the erroneous information regarding Smitherman's convictions in the database used during the background check process; (2) approve Smitherman's purchase of the subject firearm; and (3) direct the federal agent that reached out to the Dallas County Sherriff about revoking Smitherman's purported felony convictions to correct this misstatement. (Doc. 1, PageID.8–9). The Government then filed a series of unopposed motions—seven in total—to extend its deadline to respond to Smitherman's complaint (*see, e.g.*, Doc. 5) while the parties revisited Smitherman's 1989 federal criminal case in an attempt to clarify the record, *see United States vs. Smitherman*, Case No. 2:89-cr-21-KD (S.D. Ala. 1989). After investigating the record in Smitherman's federal criminal case, the Government conceded that Smitherman was not convicted of any felonies in the 1989 proceedings (Doc. 9, PageID.61), and moved to amend the judgment in that case to affirmatively state that Smitherman was convicted of misdemeanor offenses.[2]

---

[2] The Government explained the ambiguity surrounding Smitherman's convictions:
> Whether Plaintiff is prohibited from possessing a firearm turns on whether Plaintiff was convicted of "a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g). Based on the sentencing classification of offenses, crimes that are "punishable by imprisonment for a term exceeding one year" are classified as

4

The court denied the motion, reasoning that the Government did not identify any clerical error resulting from an oversight or omission, thus depriving the court of authority to amend the judgment. (2:89-cr-00021-KD, Doc. 1, PageID.24).

Following this ruling, on March 2, 2021, the NICS Section of the FBI issued Smitherman a UPIN permitting him to purchase a firearm. (Doc. 19, PageID.78). With this UPIN, Smitherman completed a firearm purchase on March 19, 2021 and the Dallas County Sherriff reissued his pistol permit. (Doc. 19, PageID.78). While Smitherman concedes that he received the UPIN and his pistol permit, he notes that his attempt to buy the special purchase firearm identified by NICS Transaction Number 1000RV82F failed because the firearm dealer refused to honor the UPIN

---

felonies. 18 U.S.C. § 3559. Therefore, the FBI researched to see if either of the crimes for which Plaintiff was adjudged guilty were "punishable by imprisonment for a term exceeding one year," regardless of the fact that Plaintiff was only sentenced to six months. On November 10, 1988, when Plaintiff committed his crimes, 21 U.S.C. § 846 stated, "Any person who attempts or conspires to commit any offense defined in this title is punishable by imprisonment or fine or both which may not exceed the maximum punishment as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

On November 10, 1988, possession of a Schedule II controlled substance was a crime under two code sections, 21 U.S.C. § 841 and 21 U.S.C. § 844a, both of which provide for imprisonment for terms greater than one year in some instances. The criminal docket and Judgment were silent as to which underlying possession crime formed the basis for the attempt charge in Count II. However, when the criminal Judgment was entered, a special assessment of $50 was assessed against an individual only if the offense was a felony. 18 U.S.C. § 3013 (1989).

(Doc. 19, PageID.82–83).

letter for the purchase of another firearm. (Doc. 21, PageID.91). The Government filed the present motion to dismiss Smitherman's complaint as moot. (Doc. 19).

## II. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction over a case. Such motions can be presented as facial attacks or factual attacks:

> "Facial attacks" on the complaint "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)). "Factual attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*

*Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). However, a "district court should only rely on Rule 12(b)(1) '[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action.'" *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (quoting *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997)).

The mootness doctrine provides a key limitation on the Court's jurisdiction. "A moot case is nonjusticiable and Article III courts lack jurisdiction to entertain it." *Troiano v. Supervisor of Elections in Palm Beach Cty.*, 382 F.3d 1276, 1281 (11th Cir. 2004). "An issue is moot 'when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" *Friends of Everglades v. S. Fla. Water*

6

*Mgmt. Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009) (quoting *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1217 (11th Cir. 2000)). In order for a court to maintain jurisdiction over a suit, the controversy between the parties must remain live throughout the entire course of the proceedings, not just "at the time the complaint is filed." *Christian Coal. of Fla., Inc. v. United States*, 662 F.3d 1182, 1190 (11th Cir. 2011) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). A party arguing that a claim is moot "bears the 'heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again.'" *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Georgia*, 633 F.3d 1297, 1310 (11th Cir. 2011) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

"The doctrine of voluntary cessation provides an important exception to the general rule that a case is mooted by the end of the offending behavior." *Troiano*, 382 F.3d at 1282. "Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave 'the defendant . . . free to return to his old ways.'" *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, (1968) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)); *see also Sec'y of Labor v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992) ("It long has been the rule that 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot.'" (quoting *W.T. Grant Co.*, 345 U.S. at 632)). As the Eleventh Circuit noted, however, "there is an important exception to this important exception, when there is

7

no reasonable expectation that the voluntarily ceased activity will, in fact, actually recur after the termination of the suit." *Troiano*, 382 F.3d at 1283. "Moreover, when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will not recur." *Id.* The Government must "justify application of the presumption before benefiting from it" by first demonstrating that its offending conduct has been unambiguously terminated. *Doe v. Wooten*, 747 F.3d 1317, 1323 (11th Cir. 2014).

"In conducting both the initial inquiry of unambiguous termination as well as the following evaluation about whether there is a reasonable basis the challenged conduct will recur," a court must consider three factors:

> (1) "whether the termination of the offending conduct was unambiguous;" (2) "whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction;" and (3) "whether the government has 'consistently applied' a new policy or adhered to a new course of conduct."

*Id.* at 1322–23 (quoting *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 531–32 (11th Cir. 2013). A court should also consider the "timing and content of the cessation decision . . . in evaluating whether the defendant's stopping of the challenged conduct is sufficiently unambiguous." *Wooten*, 747 F.3d at 1323. Further, courts should be "more likely to find a reasonable expectation of recurrence when the challenged behavior constituted a continuing practice or was otherwise deliberate." *Id.* (quoting *Atheists of Fla., Inc. v. City of Lakeland,* 713 F.3d 577, 594 (11th Cir.2013)). Ultimately, "the Supreme Court has held almost uniformly that voluntary cessation [by a government defendant] moots the claim." *Jacksonville Prop. Rts. Ass'n, Inc. v.*

*City of Jacksonville*, 635 F.3d 1266, 1274 (11th Cir. 2011) (quoting *Beta Upsilon Chi Upsilon Chapter v. Machen*, 586 F.3d 908, 917 (11th Cir. 2009).

### III. Discussion

The undersigned will analyze whether a live controversy remains between Smitherman and the Government before determining whether the voluntary cessation expectation to the mootness doctrine should apply.

A. Mootness Analysis

The Government contends that it has met its burden in establishing that the present controversy is moot. Specifically, the Government emphasizes that Smitherman "has successfully completed the purchase of a firearm and Sheriff Granthum has reissued Plaintiff's pistol permit . . . ." (Doc. 19, PageID.81). Smitherman concedes these facts (Do. 21, PageID.89), but argues that the issuance of the UPIN is insufficient, as there has still not been a correction of the erroneous information which prompted his denied firearm purchase application and permit revocation (Doc. 21, PageID.91). The Government insists that "the alleged 'erroneous information' is based on [Smitherman's] criminal record, which neither the FBI not the NICS Section can change, and the UPIN is the correct remedy." (Doc. 19, PageID.81).

The undersigned agrees with the Government: Smitherman's UPIN and subsequent restoration of his pistol permit leaves the Court with no meaningful relief

to provide, mooting the case and depriving the Court of subject matter jurisdiction. The Government's motion to dismiss presents a factual attack on jurisdiction as it challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings" allowing the Court to consider "matters outside the pleadings." *See Lawrence*, 919 F.2d at 1529. The parties agree that two of Smitherman's requested forms of relief—that his initial firearm purchase application be approved and that his Dallas County pistol permit be restored—have been satisfied. (Doc. 19, PageID.81; Doc.21, PageID.89–90). The core of Smitherman's remaining claim is a request that the Government correct the allegedly erroneous information that led to his wrongful denial of a firearm purchase application.[3] (*See* Doc. 1, PageID.8). However, throughout both this litigation and the parallel proceeding to alter the judgment in his criminal case, Smitherman has not identified any erroneous information to correct—his judgment of conviction simply does not include any express felony or misdemeanor designation. (*See* Doc.21, PageID.95). Instead, the Government mistakenly construed the imposition of two $50 special assessments in the criminal judgement as evidence that Smitherman had been convicted of felony offenses. (*See*

---

[3] Smitherman's claim for attorney's fees (Doc. 1, PageID.9) cannot stave off a mootness inquiry. An "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) (citing *Diamond v. Charles,* 476 U.S. 54, 70–71 (1986)). However, a dismissal for lack of subject matter jurisdiction on mootness grounds does not necessarily foreclose Smitherman's efforts to collect attorney's fees. *See Jacksonville Prop. Rts. Ass'n, Inc.*, 635 F.3d 1266, 1275 n.20 (11th Cir. 2011) (noting that a lawsuit mooted by a government actor's voluntary cessation did not prevent the plaintiff from seeking attorney's fees under 42 U.S.C. § 1988).

Doc. 19, PageID.83). To remedy this issue for Smitherman's wrongfully denied firearm purchase and for subsequent purchases, the Government issued Smitherman a UPIN that alerts the FBI during the firearm purchase application process that it possesses information that "clear[s] the 1989 convictions" on Smitherman's record. (Doc. 19, PageID.84). While this process "will not automatically result in a proceed response on subsequent purchases" because a "complete NICS check is still required" to "verify that there is no subsequent prohibiting information available" (Doc. 19, PageID.84), Smitherman's background check should no longer indicate that he is a person prohibited from possessing firearms. In other words, the original impetus for this suit has dissipated.

Other courts agree that issuing a UPIN moots a party's suit to remedy a wrongful firearm purchase denial. For example, in *Umbert v. United States*, the court held that after receiving a UPIN from the Government following a wrongful denial of a firearm purchase application, the plaintiff's claims were mooted. 2019 WL 4305576 at *7. The *Umbert* court rejected the argument that the Government may still wrongfully deny a plaintiff's future firearm purchases because a UPIN will not automatically issue a "proceed" response during a NICS background check, reasoning that such a claim was "purely speculative." *Id.* Like the plaintiff in *Umbert*, Smitherman argues that his issuance of a UPIN does not provide the complete relief he is entitled to because the Government may renege on its promise to abide by the procedure, or it may be revoked entirely "at the whim of Congress or even, perhaps, the stroke of a Presidential pen." (Doc. 21, PageID.99). However, Smitherman's

11

concerns are "purely speculative," *see Umbert*, 2019 WL 4305576, at *7, and inconsistent with the Government's commitment to the UPIN process for as long as Smitherman qualifies. (*See* Doc. 19, PageID.85).

Smitherman also raises concerns with the viability of the UPIN as a remedy given his recent difficulties buying a special firearm from a federally licensed dealer. Specifically, Smitherman offers to prove that "he was unable to complete the firearm transfer identified by NICS Transaction Number (NTN) 1000RV82F because that firearm dealer, after over four years had passed during the pendency of the Plaintiff's NICS appeal and of the instant case, no longer had the special purpose firearm desired by the Plaintiff and refused to honor the Plaintiff's UPIN letter for the purchase of another firearm." (Doc. 21, PageID.91). This argument fails because a *firearm dealer's* refusal to sell Smitherman a firearm on the basis of unavailability, delay, or dissatisfaction with a UPIN, is unrelated to the Government's challenged conduct in this case. Smitherman's core claim against the Government is that it wrongfully denied his firearm purchase application based on its mistaken belief that he was a felon disqualified from purchasing firearms. (*See* Doc. 1, PageID.8). The UPIN corrects this mistaken interpretation, and resulted in Smitherman's successful firearm purchase applications in other instances. (Doc. 21, PageID.91). An independent, federally licensed firearm dealer's refusal to honor the VAF process is beyond any party's control, and thus irrelevant in determining whether a live controversy remains between the Government and Smitherman. Smitherman's UPIN ensures that his prior misdemeanor convictions will not stymie future firearm

purchase applications, mooting the last live controversy between the parties and removing the ability of this Court to provide a meaningful remedy.

B. Voluntary Cessation Analysis

While Smitherman's UPIN extinguishes the live controversy between the parties over the latter's eligibility to purchase firearms, the Government was stirred to action only after Smitherman brought suit. As a result, the undersigned must determine if the present case falls into the voluntary cessation exception to the mootness doctrine. Based on the Government's representations, as well as the undisputed facts regarding Smitherman's successful firearm purchases with his UPIN, the voluntary cessation exception to the mootness doctrine should not apply because there is "no reasonable expectation that the voluntarily ceased activity will, in fact, actually recur after the termination of the suit." *See Troiano*, 382 F.3d at 1283.

The Government's unambiguous termination of its improper denial of Smitherman's firearm purchase application—as evidenced by its vow to honor the UPIN and its approval of subsequent firearm purchases—weighs in favor of finding that the voluntary exception to the mootness doctrine does not apply. *Compare Harrell v. The Fla. Bar*, 608 F.3d 1241, 1266–67 (11th Cir. 2010) (noting that "if a governmental entity decides in a clandestine or irregular manner to cease a challenged behavior, it can hardly be said that its 'termination' of the behavior was unambiguous."), *with Troiano,* 382 F.3d at 1285 (noting that the Government's after voluntarily ceasing the offending conduct provided "ample evidence" of an

unambiguous termination). After establishing that its offending conduct has been unambiguously terminated, the Government is entitled to a rebuttable presumption that, once it stopped wrongfully denying Smitherman's firearm purchase applications, it would not reengage in the offending behavior in the future. *See Troiano*, 382 F.3d at 1283; *Wooten*, 747 F.3d at 1323.

The Government also engaged in significant deliberation and review of Smitherman's criminal case, *see supra* note 3, before determining that it wrongfully denied his original firearm purchase application and provided Smitherman with a UPIN. (*See* Doc. 19, PageID.85). This deliberate process also indicates that the Government issued Smitherman's UPIN because their initial assessment concerning his felon status was wrong, not as a means to manipulate this Court's jurisdiction. *See Christian Coal. of Alabama v. Cole*, 355 F.3d 1288, 1292 (11th Cir. 2004) (holding that a party's commitment to refrain from its offending conduct after careful analysis "was not made so as to merely avoid a ruling by the federal court").

Finally, the Government affirms—and Smitherman presents no evidence to the contrary—that Smitherman's UPIN will be not revoked without good cause. Since being issued a UPIN, the Government has cleared Smitherman to "purchase firearms from a federally licensed gun dealer" (Doc. 21, PageID.90), evidencing commitment to its new course of conduct. *See Troiano*, 382 F.3d at 1286 (holding that a governmental entity's adherence to a new course of conduct, in the absence of evidence that entity would renege, supported a finding that the offending conduct would not reoccur). Accordingly, the undersigned finds that after weighing the three

factors set out in *Wooten*, the voluntary cessation exception to the mootness doctrine should not apply here, and that there is no live controversy between the parties.

## IV. Conclusion

Accordingly, the undersigned **RECOMMENDS** that the Government's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) (Doc. 19) be **GRANTED**, and that Smitherman's complaint (Doc. 1) be **DISMISSED without prejudice**.[4]

**DONE** this the 7th day of June 2021.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] The Government seeks a dismissal with prejudice. (Doc. 19, PageID.86). However, such a result is not possible: "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.